```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/8/2014

KAMAL BOUTROS, SAMUEL ZUNIGA,

        Plaintiffs,

   -v-

JTC PAINTING AND DECORATING CORP.,
JOHN CARUSO,

        Defendants.

------------------------------------------------------------------X

12 Civ. 7576 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

  In this lawsuit under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and New York Labor Law ("NYLL"), two painters, Kamal Boutros and Samuel Zuniga, alleged that their longtime employer, JTC Painting and Decorating Corporation ("JTC"), and its owner John Caruso, failed to pay them overtime pay to which they were allegedly statutorily and contractually entitled. Zuniga also alleged that JTC retaliated against him after he filed this lawsuit, in violation of the FLSA. The parties have reached a settlement agreement except as to the amount of plaintiffs' attorney fees to be paid by defendants. Plaintiffs seek $87,931.25 in fees. Defendants argue that this amount should be reduced by more than 80 percent. For the reasons that follow, the Court grants plaintiffs' fee application, with the exception of certain discrete aspects discussed herein.

## I.  Background

  Defendants object to the amount of plaintiffs' fee request on two grounds: that (1) plaintiffs' hourly rates are unreasonably high, and (2) the hours expended by plaintiffs' attorneys in this action were unreasonably high, in large part because, according to defendants,

plaintiffs should have settled this action much earlier. To address these arguments, the Court must review the allegations and procedural history of this case in some detail.

### A. Factual Allegations

Boutros and Zuniga are painters who worked for JTC, a painting contractor. Dkt. 52 ("Third Amended Complaint" or "TAC") ¶¶ 10–12. Caruso is an owner and/or officer of JTC who controls its employment practices, including paying Boutros and Zuniga their salaries. *Id.* ¶¶ 13, 16. Boutros and Zuniga allege that JTC failed to pay them and their colleagues overtime pay, both as required by (1) the collective bargaining agreement ("CBA") to which JTC is a party, under which, for every hour a painter works in excess of 35 hours a week, JTC will pay him one and a half times his regular hourly rate ("CBA overtime"); and (2) the FLSA, under which overtime is required to be paid by covered employers for an employee's work in excess of 40 hours per week ("FLSA overtime"). *Id.* ¶¶ 22, 24–25. Instead, for overtime hours, they were paid at their normal hourly rate, *id.*, either in cash or by means of a non-payroll check, *id.* ¶ 30. Boutros and Zuniga's wage rates during their employment were between $33.50 and $39.50 per hour. *Id.* ¶ 23.

Boutros alleges that JTC failed to pay him at least 308 hours of FLSA overtime and 963 hours of CBA overtime, dating back to 2009. *Id.* ¶¶ 26–27. Zuniga alleges that JTC failed to pay him at least 423 hours of FLSA overtime and 856 hours of CBA overtime, also dating back to 2009. *Id.* ¶¶ 28–29. Both men also allege that JTC owes them for CBA overtime they performed before 2009, but they do not have records for that work, and have not quantified the overtime hours prior to 2009 for which they have not been paid. *Id.* ¶¶ 27, 29. JTC allegedly similarly denied overtime to its more than 100 other painters. *Id.* ¶¶ 32–34.

### B. The Initial Complaint, JTC's Alleged Retaliation, and the Amended Complaints

On October 10, 2012, plaintiffs filed their initial Complaint, bringing claims under the FLSA and a putative class action under NYLL. Dkt. 1. On November 5, 2012, defendants answered. Dkt. 4.

Plaintiffs allege that, after they filed the Complaint, JTC "told Zuniga that he was being terminated from his job, and sent him home." TAC ¶ 74. Zuniga's attorneys intervened, and JTC brought Zuniga back to work, but assigned him to a new supervisor, who offered that JTC would pay him a significant sum of money and find employment for a relative if he withdrew from the lawsuit. *Id.* ¶¶ 75–76. Zuniga told the supervisor that any offers should be made to his attorneys. *Id.* ¶ 77. In response, JTC ceased offering Zuniga work on long-term projects; JTC now allegedly offers him only brief, undesirable assignments, even though more junior painters continue to receive long-term work. *Id.* ¶¶ 77–79.

On February 25, 2013, the parties stipulated that plaintiffs could amend the Complaint to add retaliation claims by Zuniga. Dkt. 12. On March 1, 2013, plaintiffs did so, filing their First Amended Complaint. Dkt. 15.

On March 15, 2013, plaintiffs filed a motion for conditional collective action certification and court-approved notice. Dkt. 18–22. On April 11, 2013, defendants filed an opposition. Dkt. 24–27. On April 17, 2013, plaintiffs filed a reply. Dkt. 28.

On May 31, 2013, while that motion was pending, defendants sent plaintiffs Rule 68 Offers of Judgment, offering Boutros $8,100 and Zuniga $6,400 to resolve all liability, exclusive of attorneys' fees and costs. *See* Dkt. 72 ("Moriarty Decl.") Ex. C. Plaintiffs rejected these offers. *Id.* ¶ 16.

On June 19, 2013, the Court, *sua sponte,* dismissed plaintiffs' FLSA overtime claims and denied their motions for conditional collective action certification and court-approved notice. Dkt. 31.  The Court acted on the basis of the decision in *Lundy v. Catholic Health Systems of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013), handed down the same day that the FAC was filed, which held that plaintiffs bringing a FLSA overtime claim must allege not merely that they *typically* worked unpaid overtime, but must specify *at least one week* in which they worked overtime hours but were not paid overtime.  The Court's dismissal was without prejudice to plaintiffs' right to amend.

On July 12, 2013, plaintiffs filed a Second Amended Complaint ("SAC").  Dkt. 33.  For both Boutros and Zuniga, the SAC identified numerous weeks, beginning in October 2009, in which Boutros and Zuniga had worked specific overtime hours, but had not been paid overtime rates.  SAC ¶¶ 21–24.

### C. The Second Set of Rule 68 Offers

On July 16, 2013, defendants served Offers of Judgment, pursuant to Rule 68, on Boutros and Zuniga.  Dkt. 42 Ex. E.  These offers were keyed to the specific overtime hours alleged in the SAC and, covered any "unpaid wage liability claimed in this action under the Fair Labor Standards Act." *Id.*  This time, defendants offered Boutros $11,500 and Zuniga $22,000.  *Id.*  The offers did not apply to plaintiffs' claims under the NYLL, for costs and fees, or to Zuniga's FLSA retaliation claim.  *Id.*  On August 1, 2013, Zuniga accepted the Rule 68 Offer.  Dkt. 36.

### D. The Motion to Dismiss

On August 5, 2013, JTC moved to dismiss the SAC.  Dkt. 41–43.  It argued, first, that the SAC failed to allege that JTC is an enterprise covered by the FLSA, in that it did not allege either that JTC engages in interstate activity or has gross annual sales above $500,000.  Second, it

argued, Boutros's FLSA overtime claim is moot because JTC's Rule 68 Offer of Judgment would have fully compensated him for that claim. Third, JTC argued, assuming Boutros's FLSA claim was dismissed, the Court lacked subject matter jurisdiction over the NYLL claims, because there is no common nucleus of fact between those claims and Zuniga's FLSA retaliation claim, the only remaining federal claim.

On October 2, 2013, after briefing, the Court held argument. At argument, the Court granted plaintiffs leave to amend the SAC, for the limited purpose of curing their pleadings as to whether JTC was an FLSA enterprise, which plaintiffs represented they could do. Dkt. 51. With regard to the balance of the pending motion to dismiss, the parties agreed to rest on their existing briefs. *Id.* On October 4, 2013, plaintiffs filed their Third Amended Complaint, including three paragraphs (¶¶ 18–20) addressing why the FLSA applied to JTC. Dkt. 52. On October 15, 2013, the Court issued a decision denying the motion to dismiss. Dkt. 53. On October 31, 2013, the Court held a case management conference. *See* Dkt. 56.

### E. Settlement

On December 11, 2013, the parties attended a settlement conference before Magistrate Judge Pitman, at which they reached agreement on a settlement. *See* 12/11/2013 minute entry. On January 22, 2014, the parties advised the Court that they had reached a settlement with the tentative agreement that defendants would pay plaintiffs' reasonable attorneys' fees. Dkt. 60. The parties stated that if they could not agree on the amount of fees, they would ask the Court to determine the amount upon plaintiffs' submission of a fee application. *Id.*

Boutros and Zuniga each settled for $33,000. Dkt. 77, Ex. 1–2.

**F. The Instant Motion**

On March 31, 2014, plaintiffs filed a motion for attorneys' fees and costs, Dkt. 65, and a declaration from Joshua Parkhurst, Dkt. 66 ("Parkhurst Decl."). At the time, plaintiffs requested fees and costs of $90,495.86. *Id.* ¶ 4. On April 30, 2014, defendants submitted a declaration in opposition, *see* Moriarty Decl., and a memorandum of law, Dkt. 74 ("Def. Br."). Pursuant to this Court's order, plaintiffs did not submit a reply. *See* Dkt. 67. Plaintiffs did, however, submit a letter correcting their fee application on May 6, 2014. Dkt. 76. Plaintiffs noted that the parties had agreed that plaintiffs would not seek fees for time preparing the fee application, for which they had erroneously requested $1,687.50, and that plaintiffs would not seek any costs incurred in this case, for which plaintiffs had erroneously requested $877.11. *Id.* Accordingly, plaintiffs revised their fee request downward, to $87,931.25. *Id.*

**II.   Discussion**

"Both the FLSA and the NYLL provide that a prevailing plaintiff may seek an award of reasonable attorneys' fees and costs, to be paid by the defendants." *Imbeault v. Rick's Cabaret Int'l Inc.*, No. 08 Civ. 5458, 2009 WL 2482134 at *1 (S.D.N.Y. Aug. 13, 2009) (Lynch, J.) (citing 29 U.S.C. § 216(b); N.Y. Labor Law §§ 198, 663). Defendants do not dispute plaintiffs' entitlement to fees. Instead, they dispute the amount of fees. Specifically, defendants object to the number of hours and the hourly rates for which plaintiffs' law firm, Cary Kane, LLP ("Cary Kane") seeks to be compensated.

**A.   Number of Hours**

"As the fee applicant, plaintiffs bear the burden of documenting the hours reasonably spent by counsel, and the reasonableness of the hourly rates claimed." *Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 512 (S.D.N.Y. 2011) (citation omitted). Plaintiffs are only to

be compensated for "hours reasonably expended on the litigation," and not for hours "that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983).

First, defendants argue that plaintiffs' hours are unreasonable because plaintiffs did not attempt to resolve this dispute prior to litigation and then, despite defendants' efforts, refused to engage in good-faith settlement discussions. Def. Br. 5–6; Moriarty Decl. ¶¶ 4–19. As for the first allegation, however, a failure to attempt to resolve a dispute prior to litigation is not *per se* unreasonable so as to deprive plaintiffs of the ability to recover fees for litigation work. And defendants' response to the lawsuit, after it was filed, does not by any means suggest that, had plaintiffs initiated pre-litigation settlement talks, defendants stood then ready to settle. As for the second allegation, defendants fault plaintiffs for insisting, on December 3, 2012, that negotiations be conducted on a class-wide basis, *see* Moriarty Decl. ¶ 8, but defendants do not cite any law for the unlikely proposition that plaintiffs' counsel in a putative NYLL class (or FLSA collective) action acts unreasonably by seeking a class-wide resolution where there is a basis to believe that a class has been injured by a defendant's broad-ranging failure to pay legally required wages.

Defendants also fault plaintiffs for rejecting the first set of Rule 68 Offers, for $8,100 and $6,400, respectively, and fault Boutros for rejecting the second Rule 68 Offer, for $11,000. However, on the record at hand, those rejections appear entirely reasonable, particularly in light of defendants' ultimate decision to settle for a much higher sum—$33,000 per plaintiff. More broadly, defendants fault plaintiffs for not having come forward with a specific damages figure, leaving it to defendants to do so, thereby, defendants claim, stymying settlement. *See id.* ¶ 7 (seeking specifics as to plaintiffs' claimed damages); *id.* ¶¶ 9–11 (stating generally that plaintiffs

continued to attempt to settle, to no avail); *id.* ¶ 12 (on May 15, 2013 pre-Settlement Conference call with Magistrate Judge Pitman, plaintiffs' counsel was unable to articulate damages sought). But context is critical.  Plaintiffs may well have been unable to provide a full and accurate description of damages without discovery; under the FLSA, it is "the employer's responsibility to 'make, keep, and preserve' records of employee wages and conditions of employment." *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 331 (S.D.N.Y. 2005) (quoting 29 U.S.C. § 211(c)).  And in the Court's experience supervising numerous lawsuits brought under the FLSA and the NYLL, settlement often cannot be attained until defendants have come forward with such records, to the extent they have preserved them.  For these reasons, defendants have not shown that plaintiffs unreasonably blocked efforts at settlement.  Rather, plaintiffs appear to have worked effectively and vigorously to obtain a substantial settlement for their clients; and the considerable appreciation in defendants' settlement offers, which grew from original offers of judgment of $8,100 and $6,400, respectively, to ultimate settlements of $33,000 per plaintiff, is graphic confirmation of the effectiveness of plaintiffs' counsel's strategy.

Second, defendants argue that plaintiffs' hours are excessive.  Def. Br. 7.  Defendants do not explain the basis for this claim, except to recite the number of hours plaintiffs worked on the complaint, the motion to dismiss, etc.  That mere categorization does not persuade the Court that the hours billed were unreasonable. To be sure, several of the entries for which plaintiffs seek reimbursement appear on the upper end of the continuum of reasonableness, but, with plaintiffs having represented that they worked more than these hours and substantially pruned the hours on which they seek fees, and with defendants having failed to explain their claims that the hours for

which reimbursement is sought are unreasonable, the Court is, with one exception, unprepared to hold that these were excessive.[1]

Third, defendants argue, without citation to any authority, that it was not reasonable for plaintiffs to seek reimbursement for the work of two, as opposed to one, lawyers in participating in strategy discussions, and for attending court appearances. Def. Br. 8. To the contrary: There is nothing *per se* unreasonable about two timekeepers participating in such work, and defendants have failed to explain why this legal work would necessarily have been performed equally effectively by a single timekeeper. Although a single lawyer often will represent plaintiff(s) in cases before the Court involving claims brought under the FLSA and NYLL, it is hardly uncommon or outside of professional standards for two counsel to appear, and the Court has often benefitted from the input of both counsel who attend such conferences.

Fourth, defendants argue that much of plaintiffs' attorneys' work was unnecessary. Def. Br. 8. Defendants insist that plaintiffs' counsel wasted time reviewing defendants' discovery productions, much of which, defendants represent, concerned employees who were potentially similarly situated to the named plaintiffs. But these efforts appear to have been reasonable—plaintiffs moved for collective certification; and although they did not renew that motion after it was denied without prejudice, their decision not to renew may have been caused by the intervening motion to dismiss and the later success of the settlement conference. The Court cannot conclude that plaintiffs' exploration of collective certification was unreasonable or otherwise unproductive. On the contrary, defendants' motivation to settle, at much higher figures than originally offered, may have stemmed from their recognition that plaintiffs were

---

[1] As discussed *infra*, however, the Court will reduce the amount of time that plaintiffs may claim for reviewing and calculating plaintiffs' damages. Plaintiffs claim to have devoted 42.25 hours, to this task, of which 19.75 hours is attributed without explanation, to a single summer associate on a single day.

likely, if settlement did not occur, to expand the cases by pursuing claims on behalf of other employees, whether as part of an FLSA collective or NYLL class action. Moreover, to their credit, plaintiffs have voluntarily eliminated from their calculation the time incurred in preparing the motion for collective certification. *See* Parkhurst Decl. ¶ 34.

Defendants also object that the time plaintiffs spent meeting with potential plaintiffs was unnecessary. Def. Br. 9. As explained, this work was reasonable and not unnecessary. However, the time spent interviewing plaintiffs other than Boutros and Zuniga should not be recoverable in this lawsuit; those other plaintiffs never became parties to this case, and therefore cannot have been prevailing parties. *See* Parkhurst Decl. Ex. C at 8 (0.75 hours billed by Joshua Parkhurst, Esq. for "[t]elephone calls with potential plaintiffs"); *id.* at 10 (0.25 hours for same). Similarly, the time spent "review[ing] class list" on February 28, 2013 is disallowed, as the entry gives no indication that the review was specific to Boutros and Zuniga. *Id.* at 7 (1.5 hours billed by Parkhurst). Accordingly, the Court disallows 2.5 hours claimed by Parkhurst.

Defendants also argue that it was unnecessary for plaintiffs to spend time drafting a letter to the Court complaining of defendants' alleged discovery failures while discovery was stayed. Def. Br. 9. On June 19, 2013, the Court dismissed plaintiffs' overtime claims for failure to plead specific weeks on which they were denied overtime.[2] Dkt. 31. That order stayed discovery as to the overtime claims, because such claims were no longer alleged in any operative complaint, although the Court did permit (and expect) an amended complaint to be filed that would correct these deficiencies. On July 12, 2013, plaintiffs filed the SAC, reviving their overtime claims. Dkt. 33. On July 15 and 16, 2013, plaintiffs' counsel spent 5.75 hours writing a letter to the Court, dated July 16, 2013, addressing defendants' failures to comply with discovery requests,

---

[2] The June 19, 2013 decision did not dismiss Zuniga's retaliation claim. Dkt. 31 at 8 n.4.

10

including during the interregnum between June 19 and July 12, 2013. Parkhurst Decl. Ex. C at 13; *see* Dkt. 32. The Court agrees with defendants that this letter was unnecessary; plaintiffs' counsel could not have reasonably believed that discovery was available to them on the overtime claims when no such claims were live. Accordingly, plaintiffs may not be compensated for time spent drafting the July 16, 2013 letter.

Fifth, defendants argue that plaintiffs' time records are unacceptably vague. Def. Br. 9–10. The Court rejects that claim. The descriptions to which defendants object, such as "review damage calculations," "prepare for court conference," and "revise discovery requests," although not models of optimal specificity, are sufficient to describe the substance of counsels' actions, and the tasks described are sensible ones given the state of the litigation at each point.

Sixth, defendants argue that one of plaintiffs' attorneys, Liz Vladeck, Esq., improperly billed for Spanish-language translations of discovery requests and filings of briefs, because such work is not legal in nature. Def. Br. 10 (citing Parkhurst Decl. Ex. C at 9–10, 16, 21). The Court agrees. These tasks did not require an attorney's training and should not be compensated at an attorney's hourly rate. Vladeck's work during these 8.25 hours is to be compensated at the rate of $125 an hour, which is consistent with the hourly rates of paralegals in this District. *See HLT Existing Franchise Holding LLC v. Worcester Hospitality Grp. LLC*, No. 12 Civ. 8295 (PAE), 2014 WL 1813748, at *1 (S.D.N.Y. May 7, 2014) ("A rate of $125 per hour for a senior paralegal is [ ] in line with the prevailing market rates in this District.") (collecting cases).

Seventh, defendants argue that plaintiffs' time records are "dubious and suspect" because (1) they indicate that a summer associate, Brett Waldron, spent 19.75 hours on July 25, 2012 calculating the overtime worked by Boutros, and (2) plaintiffs claim that they spent 58.5 hours opposing the motions to dismiss, although they seek compensation for only half of this amount.

11

Def. Br. 11 (citing Parkhurst Decl. Ex. C at 1 and Parkhurst Decl. ¶ 36).  As to the first, plaintiffs do not explain why Waldron, somewhat implausibly, came to work 19.75 hours on a single day on this project.  And, even if such time was worked, such grueling hours raise valid concerns about the effectiveness of the time-keeper's performance.  The Court orders that 10 hours of Waldron's time that day, but no more, be treated as reimbursable hours.  As to the second, the Court does not find the billing of 29.25 hours for a motion to dismiss implausible; that plaintiffs' counsel may have actually taken longer to brief the issue, so as, arguably, to have devoted undue time to this task, is not to their detriment here, given that plaintiffs represent that, in determining which hours on this project to seek compensation, they discounted the hours worked by 50%.

Finally, defendants argue that plaintiffs' hours should be subject to an across-the-board 80% reduction in response to the faults asserted *supra*.  Because the Court has, in the main, disagreed with defendants as to the existence of these faults, the Court denies the application for an across-the-board reduction.

### B. Hourly Rates

Three attorneys and one summer associate worked on this case for Cary Kane.  Cary Kane requests $400 per hour for then-partner, Joshua Parkhurst, Esq., who has approximately 16 years of experience; $250 per hour for its associates, Liz Vladeck, Esq., and Melissa Chan, Esq. who graduated from law school in 2006 and 2009, respectively; and $125 per hour for its summer associate, Brett Waldron.  Parkhurst Decl. ¶¶ 19–24.  These rates are within the range of prevailing rates approved in this District.  *See, e.g., Allende*, 10 Civ. 4256 (AJP), 2011 WL 891445 at *3–*4 (S.D.N.Y. Mar. 15, 2011) (finding reasonable, in an FLSA and NYLL case, a $450 per hour rate for a partner who graduated from law school in 2001 and a $275 per hour rate for an associate who graduated law school in 2007) (collecting cases); *Wong v. Hunda Glass*

*Corp.*, No. 09 Civ. 4402 (RLE), 2010 WL 3452417 at *3 (S.D.N.Y. Sept. 1, 2010) ("[T]he range of fees in this District for civil rights and employment law litigators with approximately ten years' experience is between $250 per hour and $350 per hour."); *Saunders v. City of N.Y.*, No. 07 Civ. 830 (SAS), 2009 WL 4729948, at *8 (S.D.N.Y. Dec. 9, 2009) (awarding partners with "substantial experience litigating employment matters" $425 per hour and associates between $200 and $300 per hour); *Torres v. City of New York*, No. 07 Civ. 3473 (GEL), 2008 WL 419306, at *1 (S.D.N.Y. Feb. 14, 2008) (Lynch, J.) ("The rate of $350 is not unreasonable for a lawyer of ten years' experience.") (excessive force case); *see also Gurung v. Malhotra*, 851 F. Supp. 2d 583, 597 (S.D.N.Y. 2012) (approving rate of $150 for a law clerk). Defendant argue for lower rates based on a much older case, *Marisol A. v. Giuliani*, 111 F. Supp. 2d 381 (S.D.N.Y. 2000), without explaining why prevailing rates from 14 years ago should govern here. *See* Def. Br. 2–3. Accordingly, the Court approves plaintiffs' requested rates.

## CONCLUSION

For the foregoing reasons, the Court grants plaintiffs' fee request with the following exceptions:

1. Plaintiffs are not to be compensated for the 2.5 hours Parkhurst billed for interviewing potential plaintiffs and reviewing the class list. *See* Parkhurst Decl. Ex. C at 7, 8, 10. At an hourly rate of $400, this diminishes plaintiffs' fees by $1,000.

2. Plaintiffs are not to be compensated for time spent drafting the July 16, 2013 letter. This reduces Parkhurst's hours by 4.75 and Vladeck's time by 1 hour. *See* Parkhurst Decl. Ex. C at 13. At hourly rates of $400 and $250, respectively, this diminishes plaintiffs' fees by $2,150.

3. Plaintiffs are to be credited for the 8.25 hours Vladeck spent in connection with translations and filings at the rate of $125 per hour, instead of Vladeck's otherwise-approved rate

of $250 per hour. *See* Parkhurst Decl. Ex. C at 9–10, 16, 21. This diminishes plaintiffs' fees by $1,031.25.

4. Plaintiffs are to be credited for 10 of Waldron's 19.75 hours billed in a single day. *See* Parkhurst Decl. Ex. C at 1. This reduces Waldron's hours by 9.75. At an hourly rate of $125, this reduces plaintiffs' fees by $1,218.75.

In total, plaintiffs' fee request is reduced by $5,400. Plaintiffs requested $87,931.25 in fees; they are to receive $82,531.25.

Separately, the parties have also requested that the Court approve their settlement. *See* Dkt. 77. The Court determines that the settlements, of $33,000 per plaintiff, are fair and reasonable. The settlements are approved.

The Clerk of Court is respectfully directed to terminate the motion pending at docket number 65, and to close this case.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: August 8, 2014
New York, New York